UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BETHANY LIOU,

             Plaintiff,

    v.

STONECREST FINANCIAL, INC., et al.,

             Defendants.

Case No.  25-cv-06184-EMC

**ORDER GRANTING MOTION TO DISMISS**

Docket No. 39

## I.      INTRODUCTION

Plaintiff Bethany Liou brings this action alleging more than thirty causes of action under state and federal law to challenge the foreclosure of multiple properties.  This Court has already found that Ms. Liou is not in legal possession of any of the subject properties.  Dkt. 19; Dkt. 32; *see also* Dkt. 15, Ex. 13 (state superior court unlawful detainer judgment against Ms. Liou).  In essence, Ms. Liou seeks to unwind completed foreclosures and to obtain relief based on alleged fraud, coercion, and statutory violations arising from Defendants' enforcement of contractual remedies following Ms. Liou's default.

The operative pleading consists of a Complaint, and a "Preliminary First Amended Complaint" ("FAC").  Dkt. 1; Dkt. 26.  Although Ms. Liou later retained counsel, no further or "Finalized" FAC was ever filed.  Defendants now move to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

For the reasons set forth below, the Court concludes that Ms. Liou has not plausibly stated a viable claim for relief.  The record reflects that: Defendants lawfully foreclosed on the properties, issues concerning legal possession of one of the key properties was already adjudicated in state superior court against Ms. Liou, and Ms. Liou executed multiple written agreements

United States District Court<br>Northern District of California

releasing "any and all" present and future claims relating to the loan, the foreclosure process, and related proceedings. *See* Dkt. 15, Exs. 11–13; Dkt. 31, Exs. 4–6.

Ms. Liou has not plausibly pleaded a basis to avoid the effect of these releases, nor has she alleged a sufficient, non-conclusory basis for any of her legal theories. Because the deficiencies are legal and structural and not curable by amendment, the Court **GRANTS** Defendants' Motion to Dismiss **WITHOUT LEAVE TO AMEND**.

## II.    BACKGROUND

A.    Factual Background

Plaintiff Bethany Liou is a California resident and the sole managing member of two California limited liability companies, Grande Oak LLC and Grande, LLC. Dkt. 1 (Complaint) ¶ 5–7. Through these entities, Ms. Liou owned, financed, and developed multiple real estate projects throughout California. *Id.* Grande Oak LLC was the owner of certain properties in Tulare County, and Grande, LLC was the legal owner of certain properties in San Mateo County. *Id.* The properties at issue in this case are a residential property in Atherton (the "Atherton Property") and several properties in Tulare County (the "Tulare Properties").[1] *Id.*

Defendant Stonecrest Financial, Inc. ("Stonecrest") is a California-based lender. Dkt. 1 ¶ 8. Defendant Secured Income Fund-II, LLC ("Secured Income Fund") is a lending entity that is allegedly affiliated with Stonecrest and that "participated in the wrongful foreclosure, fraud, breach of contract, and unjust enrichment." *Id.* ¶ 9. Defendant PLM Loan Processing Center, Inc. ("PLM") served as trustee and foreclosure recorder alleged "to record and carry out nonjudicial foreclosure sales, in violation of state and federal law." *Id.* ¶ 10. Defendants Jon O. Freeman and Shafiq Taymuree are individuals described as principals and agents of Secured Income Fund who participated in the alleged fraud and wrongful foreclosures. *Id.* ¶¶ 11–12.

---

[1] The Atherton property is located at 68 Almendral Avenue, Atherton, California 94027 (Assessor's Parcel Number ("APN") 059-312-230). In some documents in the record, it is referred to as the San Mateo County property or Almendral property.

The Tulare Properties comprise roughly 35 acres and are identified by their APNs: 166-230-010-000; 166-220-011-000; 166-220-012-000; 166-220-013-000; 166-230-001-000; 166-230-009-000; and 166-240-008-000. Complaint ¶¶ 6–7.

In April 2019, Liou and Defendant Secured Income Fund entered into a loan transaction in the amount of $6,500,000.00 for the Atherton Property. The loan was memorialized by a deed of trust and secured against the Atherton and Tulare Properties. *See* Dkt. 39 (Request for Judicial Notice) ("RJN"), Ex. 1 (Deed of Trust recorded May 1, 2019, listing principal amount of $6,500,000.00 and the Tulare Properties identified by APNs as "consideration of the indebtedness and the trust created by this Instrument"); Ex. 2 (Guarantor's Deed of Trust recorded May 1, 2019, listing the "Property Address" as the Atherton Property and stating that the note is also secured by the seven Tulare Properties, identified by APNs); *see also* Dkt. 15, Ex. 12 (Settlement Agreement) (stating that Ms. Liou executed a deed of trust against the Tulare and Atherton Properties on April 25, 2019).

The loan documents contained standard provisions governing default, acceleration, and foreclosure. Dkt. 39, Ex. 1 ("If an Even of Default has occurred, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, any may invoke the power of sale and any other remedies permitted by California law or provided in this Instrument or in any other Loan Document."). The loan documents also contained provisions reserving Defendants' right to foreclose in the event of default. *Id.*, Exs. 1–2 (stating that "[a]ny default under the Note or as to **ANY** property given as security shall constitute a default under the Note and under **both** Deeds of Trust and foreclosure may be commenced and completed on all properties" and "[i]n the event of default hereunder, Lender may foreclose upon Guarantor's Property to satisfy the obligations of Guarantor hereunder") (emphases in original).

The record reflects that at some point around 2021, Ms. Liou defaulted on her loans. *See* Dkt. 31, Exs. 4–6 (Forbearance Agreements). Defendant Secured Income Fund recorded notices of default and election to sell, and foreclosure proceedings were initiated on the Tulare and Atherton Properties. *Id.* Ms. Liou contests that the defaults were fraudulently recorded. *See* Dkt. 26 (FAC) ¶¶ 19, 29 ("Defendants falsely claim Plaintiff transferred her Atherton Property from her personal name to Grande, LLC, triggering a default."). Ms. Liou also blames the COVID-19 pandemic for disrupting the real estate market, causing Ms. Liou to seek forbearances and refinancing. Dkt. 1 ¶ 20.

Between June 2022 and December 2022, Liou entered into three separate written Forbearance Agreements with Defendant Secured Income Fund. *Id.* The Forbearance Agreements: (1) acknowledged existing defaults under the loan documents, (2) provided for temporary forbearance from foreclosure upon specified conditions, (3) required payment of additional sums and fees, and, most relevant to this action, (4) contained broad release provisions under which Ms. Liou released any and all claims relating to the loan and foreclosure process:

> A.  RECITALS, BORROWER'S DEFAULT AND INTRODUCTORY PROVISIONS.
>
> …
>
> 2.  Borrower is in default under the terms of the Loan Documents, for defaults including, but not limited to, the following: Delinquent principal and interest payments and reinstatement fees.
>
> . . .
>
> 5.  Borrower desires that Lender forbear in pursuing some or all of its remedies . . . for the following reasons: To obtain additional time to payoff the loan.
>
> . . .
>
> B.  BORROWER'S PERFORMANCE
>
> . . .
>
> (1)(a)(2)  Pay the sum of $36,427.00 on or before 3:00 pm PST June 28, 2022.
>
>> (1)(a)(2)(a)  Included in this amount is a forbearance fee in the amount of $30,000.00.
>
> . . .
>
> I.  BORROWER'S WAIVER AND RELEASE
>
> 1.  Representation.  AS MATERIAL CONSIDERATION INDUCING LENDER'S CONSENT TO THIS AGREEMENT, BORROWER REPRESENTS AND WARRANTS THAT BORROWER HAS NO CLAIMS, ACTIONS OR OFFSETS RELATING TO THE LOAN DOCUMENTS, THE SECURED OBLIGATION, AND/OR THE LENDER'S EXERCISE OF ANY REMEDIES TO ENFORCE THE [LOAN DOCUMENTS].
>
> 2.  Release of All Claims. As further consideration for this Agreement, Borrower, . . . hereby releases and forever

4

discharges Lender, Lender's predecessors and successors in interest, brokers and agents, . . . loan servicers, trustees, employees, partners, officers, directors, shareholders, insurers, attorneys, spouses, heirs, executors, administrators and assigns, . . . from any and all past, present, and future claims, demands, obligations, losses, causes of action, costs, expenses, attorneys' fees, liabilities, and indemnities . . . whether based on contract, tort, statute, or other legal or equitable theory of recovery, whether known or unknown, which Borrower . . . have or may acquire in the future, against Releases arising out of or in any way related to the [Loan Documents], . . . including . . . all matters arising from, or related to, [RESPA and TILA], . . . or collection of and/or foreclosure of the Loan Documents . . . ."

3.  Effect of Release.  The Borrower acknowledges and agrees that this release given upon executing this Agreement applies to all claims for injuries, damages, or Losses . . . .

. . .

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Dkt. 31, Ex. 4; *see also id.* Exs. 4–5.

The Forbearance Agreements also contained integration clauses and acknowledgements that the parties entered the Agreements voluntarily and with an opportunity to consult counsel. *Id.* (stating that the agreement "is a fully integrated agreement" and that the borrower "has been advised to take this agreement to an independent licensed attorney" and has "either consulted with counsel or has been given an opportunity to do so").  Ms. Liou also alleges that the Forbearance Agreements were fraudulently induced.  Dkt. 1 ¶ 49 ("[Forbearance Agreements] were misrepresented to Plaintiff as routine forbearance or settlement terms, but in fact contained: . . . Acknowledgments of default.").

Despite the agreement to three separate forbearance periods, Ms. Liou did not cure the defaults, and Defendants thereafter initiated foreclosure proceedings and sold the properties. *See* Dkt. 15, Ex. 12.  A Trustee's Deed Upon Sale was recorded with respect to the Tulare County parcels in November 2023.  RJN, Ex. 3.  Ms. Liou disputes the "legality and validity" of the deed and any transfer of ownership.  Dkt. 1 ¶ 114.  And a Trustee's Deed Upon Sale was recorded

5

against the Atherton Property in March 2024.  RJN, Ex. 4.  Ms. Liou also disputes the legality and validity of that deed and any transfer of ownership.  Dkt. 1 ¶ 114.

Following the foreclosure of the Atherton Property, Secured Income Fund initiated an unlawful detainer action in state superior court to recover possession of the property.[2]  Opposition to TRO Motion, Ex. 10.  As part of that action, Secured Income Fund and Ms. Liou agreed to a Stipulation for Entry of Judgment in favor of Secured Income Fund.  Dkt. 15, Ex. 11.  The Stipulation stated that Ms. Liou was no longer entitled to possession or any claims related to the Atherton Property: "[Liou] warrant[s] and represent[s] that on September 10, 2024 at 6pm pt . . . [Liou] [is] no longer entitled to possession of the [Atherton Property] and hereby surrender[s] any claim or right of possession."  *Id.*  As part of this Stipulation, Ms. Liou once again released Secured Income Fund from any and all legal claims:

> Upon execution of this Stipulation by all Parties, [Ms. Liou] hereby release[s] and forever discharge[s] [Secured Income Fund] and any and all (including present, past and future) of their officers, directors, partners, shareholders, associates, employees, members, parents, subsidiaries, past or present loan servicers, predecessors, successors, assigns, affiliates, attorneys, agents, representatives, holders, trusts, trustees, assignees, beneficial owners, certificate holders, servicers, master servicers, sub-servicers, and/or special servicers and any person acting on behalf of or at the direction of or for the benefit of any of them, . . . *from any and all claims, complaints, demands,* defenses, obligations, liability, causes of action, damages, fees, costs and/or expenses whatsoever *of any kind or nature whether known or unknown*, including, but not limited to, those *arising out of or related in any manner to the Property*, the underlying eviction action, or the allegations asserted in the [unlawful detainer] Complaint, . . . or which reasonably relate in any manner to [these claims].

*Id.* (emphases added).

Ms. Liou appears to have been represented by counsel when entering into the Stipulation. *See id.* at 5 (signed by Paul Manasian, "Attorney for Defendants, Bethany Liou and Richard Liaw").

The parties also entered into a "Settlement Agreement and General Release of Claims" reiterating that Ms. Liou defaulted on the loan documents and that trustee's sales were held on the

---

[2] Ms. Liou avers that the Atherton Property was her personal residence.  *See* Dkt. 1 ¶¶ 16, 26.

United States District Court
Northern District of California

Tulare and Atherton Properties. *Id.*, Ex. 12. Under the Settlement Agreement, Ms. Liou also released all claims against Defendants. *Id.* The Settlement Agreement's terms were broad and inclusive, similar to the Stipulation for Entry of Judgment and Forbearance Agreement releases:

> 6. Release. . . . in consideration of the recitals, covenants and agreements set forth in this Agreement, and other good and valuable consideration, receipt of which is hereby acknowledged, upon the effective date of this Agreement, Defendants [Ms. Liou] . . . hereby unconditionally, irrevocably, forever and fully release, acquit, and forever discharge Plaintiff [Secured Income Fund], and its predecessors, principals, parents, heirs, successors, assigns, subsidiaries, affiliates, commonly controlled entities, companies, enterprises, ventures, partners, insurers, investors, attorneys, officers, shareholders, directors, managers, agents, representatives, employees, clients, administrators, executors, personal representatives, . . . ***from any and all claims, demands, actions, causes of action, suits,*** liens, debts, obligations, promises, agreements, costs, damages, liabilities, and judgments ***of any kind, nature, or amount*** whether in law or equity, ***whether known or unknown***, anticipated or unanticipated, liquidated or unliquidated, including any and all claimed or unclaimed compensatory damages, consequential damages, interest, costs, expenses and fees . . . ***which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the [unlawful detainer] action, the [Atherton] Property, the Tulare Lots, the Trustee's Sales, or the subject loans***.

*Id.* (emphases added).

The Settlement Agreement was also signed by Ms. Liou and her counsel at the time. *Id.*

The Superior Court order entering judgment for Secured Income Fund in the unlawful detainer action ruled that Secured Income Fund was "awarded immediate possession" of the Atherton Property. Dkt. 31, Ex. 13.

Now, Ms. Liou alleges that she was entitled to a $103 million construction loan that would have paid off all debts to Defendants. Dkt. 1 ¶ 21. But she alleges that Defendants imposed arbitrary payoff dates, forced Ms. Liou into forbearance agreements with broad releases of legal rights, and delayed foreclosure in a manner leading to Defendants "wrongfully and fraudulently foreclose[ing]" on Ms. Liou's properties. *Id.* ¶¶ 22–25.

B.      Procedural Background

Ms. Liou commenced this action in 2025. Dkt. 1. The Complaint asserts eighteen causes of action, including claims for quiet title, wrongful foreclosure, cancellation of trustee's deeds,

7

fraud, unjust enrichment, intentional interference with economic advantage, and alleged violations of federal statutes such as the Truth in Lending Act ("TILA"), Real Estate Settlement Procedures Act ("RESPA"), Fair Debt Collection Practices Act ("FDCPA"), National Housing Act ("NHA"), Racketeer Influenced and Corrupt Organizations Act ("RICO"), and certain Department of Housing and Urban Development ("HUD") regulations. *Id.* The Complaint, however, principally alleges that Defendants engaged in fraudulent and coercive conduct in connection with the loans, the Forbearance Agreements, and the foreclosure process. *Id.* Ms. Liou seeks compensatory damages, statutory damages, punitive damages, injunctive relief, declaratory relief, quiet title, cancellation of foreclosure and sale documents, restoration of title and possession, constructive trust over the properties, restitution, disgorgement, accounting "of all amounts received, retained, disbursed, or collected" by Defendants, lis pendens, attorneys' fees and costs, and any other legal or equitable relief the Court deems proper. *Id.*

Ms. Liou subsequently filed a "Preliminary First Amended Complaint" ("FAC"). Dkt. 26. Ms. Liou writes that the FAC is merely preliminary and that she "reserves the right to complete First Amended Complaint upon retaining counsel." *Id.* at 2. The FAC incorporates by reference the jurisdictional, factual, and substantive allegations of the Complaint. *Id.* The FAC adds fourteen additional causes of action, including claims styled of rescission of waivers and settlement agreements, economic duress, fraudulent inducement into settlement, due process violations, fraud on the court, civil conspiracy, abuse of process, malicious prosecution, legal malpractice, and destruction of community benefit projects. *Id.*

Ms. Liou later retained counsel, *see* Dkt. 28 (Notice of Appearance), but no further amended complaint was filed. Accordingly, the FAC remains the operative pleading. *See CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1274 (9th Cir. 2021) (amended complaint superseded the original complaint and was the operative pleading).

Shortly after filing this suit, Ms. Liou sought emergency injunctive relief, including a temporary restraining order and judicial approval to record notices of lis pendens against the subject properties. Dkt. 6 (Motion for TRO); Dkt. 16–17 (Lis Pendens Requests). The Court denied Ms. Liou's motion for a TRO for failure to establish a risk of irreparable harm. Dkt. 19

United States District Court
Northern District of California

(Order Denying TRO). The order noted that "the foreclosure sales for the properties at issue have already occurred," and that "Plaintiff no longer owns the properties and there is nothing left to enjoin. Further, Ms. Liou has released all claims related to the properties and the foreclosure sale." *Id.* The Court then denied her request to record notices of lis pendens as moot. *Id.*

Despite the Court's rulings, Ms. Liou recorded notices of lis pendens against the Tulare and Atherton Properties. Dkt. 29–30 (Notices of Lis Pendens). Defendants moved to expunge the notices, Dkt. 31, and the Court granted Defendants' motion. Dkt. 34; Dkt. 36. The Court reaffirmed that the foreclosure sales had already occurred, and noted that Ms. Liou "no longer held title or any ownership interest in those properties" and that she "released all claims relating to the properties through forbearance agreements, a stipulation for judgment, and a settlement agreement." Dkt. 34. The "stipulation for judgment" referred to the Stipulation for Entry of Judgment from the unlawful detainer action in which Ms. Liou stipulated that she was not entitled to possession of the Atherton Property and released "any and all" legal claims against Defendants. *See* Dkt. 15, Ex. 11. The "settlement agreement" referred to the unlawful detainer Settlement Agreement releasing all potential claims against Defendants to this action. *See* Dkt. 15, Ex. 12.

Now, Defendants have moved to dismiss this action under FRCP 12(b)(6). Dkt. 39 (MTD). The motion challenges the claims asserted in the Complaint and FAC, and reasserts that foreclosure is complete, Ms. Liou lacks any ownership in the subject properties, Ms. Liou has waived any and all causes of action against Defendants, and the pleadings fail to state plausible claims for relief. *See id.*

Ms. Liou, though represented by counsel, never filed an opposition to Defendants' motion to dismiss.

### III.    LEGAL STANDARD

A motion to dismiss under FRCP 12(b)(6) tests the sufficiency of a complaint or counterclaim, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"

United States District Court
Northern District of California

9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  The factual allegations in the pleading are accepted as true and are construed in the light most favorable to the plaintiff.  *Harper v. Need*, 71 F.4th 1181, 1184 (9th Cir. 2023).

Even under the liberal pleading standard of FRCP 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Under *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556–57) (internal quotation marks omitted).  In sum, if the facts alleged foster a reasonable inference of liability — stronger than a mere possibility — the claim survives; if they do not, the claim must be dismissed.

For complaints alleging fraud or mistake, a plaintiff must "state with *particularity* the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Specifically, "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and

not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (internal quotation marks omitted).

*Kearns* also clarifies that the particularity requirement in FRCP 9(b) applies to claims alleging a "unified course of fraudulent conduct," even if fraud is not the basis of the plaintiff's claim. *Id.* at 1125. In such instances, the broader claim sounds in fraud such that "the pleading of that claim as a *whole* must satisfy the particularity requirement of FRCP 9(b)." *Id.* at 1127 (emphasis in original) (internal quotation marks omitted).

Ordinarily, a *pro se* complaint will be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. Of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure."). The Court applies a more generous standard because, although Ms. Liou is now represented, she filed the Complaint and FAC before retaining counsel. *See Grigoryan v. Macomber*, 2025 WL 2943239, at *1 n.2 (C.D. Cal. June 5, 2025) ("Though Petitioner now has counsel, the Petition was prepared and filed by Petitioner when he was proceeding *pro se*, so it is appropriate to construe the Petition liberally.").

## IV.    REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, the Court **GRANTS** Defendants' unopposed request for judicial notice. Dkt. 39. The request for judicial notice concerns county recorder documents, trustees' deeds, and documents filed by the Superior Court in the unlawful detainer action.

The Court may take judicial notice of public records not subject to reasonable dispute. Fed. R. Evid. 201(b). The Court may also take judicial notice of all such "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). Ms. Liou does not argue that these

United States District Court
Northern District of California

documents are irrelevant or not authentic. And each document is either referenced by, or critical to, Ms. Liou's Complaint and FAC. The documents relate to the foreclosures and related issues, and are matters of public record. *See Petrovich v. Ocwen Loan Servicing, LLC*, 2015 WL 555959, at *3 (N.D. Cal. Feb. 12, 2016) (granting request for judicial notice of deed of trust, notice of default, notice of trustee's sale, and other recorder documents in a foreclosure action); *Velasquez v. Mortgage Elec. Registration Sys., Inc.*, 2008 WL 4938162, at *2 (N.D. Cal. Nov. 17, 2008) (same).

For the foregoing reasons, the documents attached to Defendants' request are judicially noticed for their existence and legal effect, though not for the truth of any disputed facts referenced therein. *See MN Inv. Inc. v. Nguyen*, 2022 WL 3974263, at *4 n.40 (N.D. Cal. Aug. 31, 2022) (judicial notice of state public records); *Doran v. Aus*, 308 F. App'x 49, 50 (9th Cir. 2009) (judicial notice of materials from another tribunal).

## V.    DISCUSSION

The Court **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND**.

The Court considers the foreclosure proceedings and releases of legal claims first, as they are structural impediments to Ms. Liou's Complaint and FAC. The Court next reviews the merits of Ms. Liou's claims to assess whether they suffice to state a claim warranting relief.

A.    Threshold Foreclosure and Release Issues

1.    Completed Foreclosures and Post-Foreclosure Proceedings

A substantial majority of Ms. Liou's causes of action fail for two threshold issues: (1) the completed foreclosure sales, and (2) the releases and waivers that Ms. Liou executed as part of the Forbearance Agreements and unlawful detainer action (specifically, the Stipulation for Entry of Judgment and Settlement Agreement). These threshold issues dispose of significant portions of the case and frame the analysis of the remaining claims.

The record reflects, and the Court has previously noted, that foreclosure sales occurred as to both the Tulare Properties (November 2023) and the Atherton Property (March 2024), and that these sales were recorded with the relevant county authorities. Dkt. 15, Exs. 8–9; *see also* Dkt. 19 (Order Denying TRO); Dkt. 32 (Order to Show Cause re Lis Pendens). The Court previously

denied Ms. Liou's request for temporary injunctive relief on that basis, concluding that "there is nothing left to enjoin" because Ms. Liou no longer owned the properties at issue. Dkt. 19. The Court likewise granted Defendants' request to expunge Ms. Liou's lis pendens notices, again noting the completion of foreclosure sales and the absence of any present ownership or possessory interest by Ms. Liou. Dkt. 32; Dkt. 34.

Moreover, with respect to the Atherton Property, the Superior Court already determined that Defendant Secured Income Fund was to be awarded "immediate possession" of the Property, and that Ms. Liou must be physically removed from the Property. Dkt. 15, Ex. 13. The pleadings and record before this Court provide no reasoned basis to disturb or revisit that judgment.

Where Ms. Liou's pleaded relief depends on (1) preventing a foreclosure that has already occurred, (2) unwinding a sale without pleading a legally plausible basis to do so, or (3) asserting present title and possession in the face of recorded deeds and post-foreclosure proceedings, the pleading must supply nonconclusory facts allowing the Court to at least properly infer that Ms. Liou is entitled to the relief she seeks. Conclusory allegations that the sales or deeds were illegal, void, or fraudulent are insufficient. And where a plaintiff's theories sound in fraud, FRCP 9(b) requires particularity as to the "who, what, when, where, and how" of the alleged misconduct. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010).

2.       Forbearance Agreements and Releases

Ms. Liou executed three written Forbearance Agreements in June 2022, September 2022, and December 2022, in connection with the loan default and consequential foreclosures. Dkt. 31, Exs. 4–6. Each Forbearance Agreement refers to existing defaults, provides temporary forbearance in exchange for payments and fees, and contains broad representations releasing all claims "arising out of or in any way related to" the loan documents, the secured obligation, and the lender's exercise of remedies. *See id.* The Forbearance Agreements also include integration clauses and language encouraging signatories to consult counsel. *See id.*

After the foreclosure of the Atherton Property, Ms. Liou entered into a Stipulation for Entry of Judgment in the unlawful detainer action and a separate "Settlement Agreement and General Release of Claims," which, by its terms, reiterates the default and foreclosure history and

United States District Court
Northern District of California

includes a broad release of claims "which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve" the unlawful detainer action, the Atherton Property, the Tulare Properties, the trustee's sales, or the loans at issue. *See* Dkt. 15, Exs. 11–12 (Stipulation for Entry of Judgment and Settlement Agreement). Both documents were signed by Ms. Liou and her counsel at the time. *Id.* The Superior Court entered judgment awarding Secured Income Fund immediate possession of the Atherton Property. Dkt. 31, Ex. 13.

These records are central to Ms. Liou's claims because many of her causes of action, both based on statute and common law, seek relief premised on the alleged wrongfulness of Defendants' loan enforcement and foreclosure conduct. But the release agreements contain broad language releasing "any and all" claims, whether in law or equity, arising out of or relating to the loan documents, foreclosure, trustee's sales, and related proceedings. *See* Dkt. 31, Exs. 4–6; Dkt. 15 Exs. 11–12. The releases protect not only Secured Income Fund, but also all "officers, directors, partners, . . . parents, subsidiaries, past or present loan servicers, predecessors, successors, . . . affiliates, attorneys, agents, representatives, . . . trusts, trustees, assignees, investors, . . . servicers, master servicers, sub-servicers, and/or special servicers and any person acting on behalf of or at the direction of or for the benefit of any of them." *Id.*

Read together, the agreements release Defendants from the claims asserted here, all of which arise from the same loan origination, enforcement, and foreclosure conduct. The agreements are clear that all entities and persons acting in connection with the loans and foreclosure processes are released from the claims of wrongdoing asserted herein. Accordingly, the releases apply to Ms. Liou's claims against each Defendant to the extent they arise from the same loan, foreclosure, and post-foreclosure events challenged in the action.

3.      Attempts to Avoid the Releases

A significant portion of Ms. Liou's FAC is directed at avoiding the effect of the multiple releases found in the Forbearance Agreements and subsequent unlawful detainer Stipulation for Entry of Judgment and Settlement Agreement. To achieve this objective, Ms. Liou pleads related theories of rescission, economic duress, coercion, and fraudulent inducement based on the same underlying conduct. *See* Dkt. 1; Dkt. 26. The Court addresses these foundational legal theories,

finding that because Ms. Liou fails to plausibly plead a basis to avoid the legal effect of the releases, a large subset of Ms. Liou's claims are therefore barred: specifically, all those "arising out of or in any way related to" the loan documents, secured obligation, trustee's sales, and Defendants' exercise of remedies including foreclosure of the Tulare and Atherton Properties.

California law recognizes the equitable claim of economic duress as a basis to rescind an agreement in situations involving something beyond difficult bargaining circumstances. The doctrine of economic duress requires a "wrongful act" that is sufficiently coercive to cause a reasonably prudent person, faced with no reasonable alternative, to agree to an unfavorable contract. *See Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal.App.3d 1154, 1158–59 (Cal. Ct. App. 1984) ("Instead, the doctrine now may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure."); *Perez v. Uline, Inc.*, 157 Cal.App.4th 953, 959–60 (Cal. Ct. App. 2007). It is insufficient to merely show financial distress or the exercise of a lawful right, even if the ensuing pressure is serious. *See Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 333 (9th Cir. 1978) ("More importantly, however, only Unlawful pressures on a party can constitute duress."); *Goldstone-Tobias Agency, Inc. v. Barbroo Enterprise Prods., Inc.*, 237 Cal.App.2d 720, 723–24 (Cal. Ct. App. 1965) ("[R]espondent's only conduct was to press an apparently valid claim using the due processes of the law to recover monies which it in good faith believed were owing. It was not required to drop the legal proceedings . . . . The exercise of a legal right does not constitute unlawful duress or compulsion under the law of this state."); *Louisville Title Ins. Co. v. Surety Title & Guar. Co.*, 60 Cal.App.3d 781, 801 (Cal. Ct. App. 1976) (same); *Green v. AILNH, LLC*, 2019 WL 1883910, at *3 (C.D. Cal. Feb. 14, 2019) (same). Furthermore, a party pleading economic duress must have had "no reasonable alternative" to agreeing to the coercive agreement: "If a reasonable alternative was available, and there was hence no compelling necessity to submit to the coercive demands, economic duress cannot be established." *CrossTalk Prods., Inc. v. Jacobson*, 65 Cal.App.4th 631, 644 (Cal. Ct. App. 1998); *Lanigan v. City of L.A.*, 199 Cal.App.4th 1020, 1034 (Cal. Ct. App. 2011).

          a.       <u>Forbearance Agreements</u>

15

Here, Ms. Liou's allegations of coercion, duress, and fraudulent inducement are conclusory and not pleaded with sufficient facts to plausibly establish a wrongful act by Defendants. *See* Dkt. 1; Dkt. 26. Instead, Ms. Liou alleges that Defendants leveraged the threats of acceleration and foreclosure to pressure her into signing agreements containing acknowledgements of default, fees, and broad releases of all legal claims. *See id.* But nothing in the record establishes such threatened actions were not authorized by the loan documents to which Ms. Liou was signatory. And the record reflects that the Forbearance Agreements were entered into in response to existing loan defaults and pending enforcement of lender remedies, and that Ms. Liou merely sought forbearance to obtain additional time to pay off the default. *See* Dkt. 31, Exs. 4–6. The Forbearance Agreements expressly stated that the lender could exercise foreclosure remedies but that Ms. Liou sought a temporary pause. *Id.* In this context, the forbearance was a typical bargained-for postponement of enforcement, supported by consideration (fees, additional terms of payment, and the release of legal claims). The rights asserted by Defendants as leverage were legal rights. There is nothing "wrongful" alleged.

Ms. Liou emphasizes the "one-sided" nature of the Forbearance Agreements and the pressure arising from the potential loss of her properties. Dkt. 1 ¶ 23 (referring to Forbearance and release documents from the unlawful detainer action as "heavily one-sided and requir[ing] Plaintiff to waive defenses and claims under pressure of losing her properties"). But again, Ms. Liou does not plead facts showing that Defendants' threatened conduct was wrongful, rather than an exercise of express contractual remedies following default. *See* Dkt. 1; Dkt. 26. Absent non-conclusory allegations that Defendants lacked a good-faith basis to claim default, threatened unlawful action, or engaged in independently wrongful conduct to obtain the releases of legal claims, Ms. Liou's allegations describe hard bargaining in the context of a defaulted loan, not legally cognizable duress, coercion, or misrepresentation. As noted above, coercion resulting from lawful economic pressure from the exercise of legal contract right does not constitute cognizable coercion or duress sufficient to undermine the agreements.

Moreover, it is noteworthy that Ms. Liou executed *three* separate Forbearance Agreements over a half-year period, each individually acknowledging default and containing broad releases of

legal claims. Dkt. 15, Exs. 4–6. The repetition and reaffirmation over time makes it more difficult for Ms. Liou to plausibly plead that her repeated assent was the product of a wrongful act, misrepresentation, or a lack of any meaningful alternatives. *See CrossTalk*, 65 Cal.App.4th at 644 (existence of reasonable alternatives defeats a claim of economic duress); *Lanigan*, 199 Cal.App.4th at 1034.

Finally, the fraud theories are in tension with the terms of the Forbearance Agreements, which include integration clauses and encouragements to seek counsel. *Id.* Other releases of legal claims were signed by Ms. Liou *and* her counsel. Dkt. 15, Exs. 11–12.

b.      Other Releases of Legal Claims

In addition to the releases in the Forbearance Agreements, the release agreements from the unlawful detainer action also included broad releases of any and all legal claims against Defendants. *See* Dkt. 15, Exs. 11–12. Again, Ms. Liou's allegations of misrepresentation and fraudulent inducement must satisfy FRCP 9(b). Ms. Liou merely alleges that these releases were obtained through misrepresentation, but that conclusory allegation alone is insufficient to plead fraud. Although Ms. Liou filed an amended complaint and has retained counsel, she has not alleged who made the supposed misrepresentation, what exactly was misrepresented, or why she could not discover the allegedly concealed provisions by reading the agreements she signed. She fails to satisfy the requisites of FRCP 9(b). These deficiencies persist even under the most liberal construction, drawing all inferences in Ms. Liou's favor. Again, the agreements were signed by Ms. Liou *and* her counsel at the time. *Id.*

B.      Claims Challenging Title, Foreclosure, and Property Interests

Ms. Liou asserts several claims directly challenging the foreclosure process and seeking to unwind trustee's sales based on her alleged continued ownership or possessory interest in the Tulare and Atherton properties. These includes claims for quiet title, wrongful foreclosure, declaratory relief as to title or ownership, and related equitable remedies such as injunctive relief and the imposition of a constructive trust over properties and proceeds held by Defendants "resulting from the wrongful foreclosure of Plaintiff['s] assets." Dkt. 1 at 10–28.

Even construing Ms. Liou's *pro se* pleadings liberally and considering the more detailed

17

allegations of the Complaint, the claims fail for at least three independent reasons: (1) the pleadings do not plausibly allege a viable basis to unwind completed foreclosure sales and recorded trustee's deeds, (2) the claims are within the scope of Forbearance Agreements and releases from the unlawful detainer action, and Ms. Liou has not plausibly pleaded a basis to avoid those releases, and (3) to the extent the claims are premised on alleged fraud, they are not pleaded with particularity as required under FRCP 9(b).

A quiet title theory requires more than the mere conclusory allegation that a deed is "void" or that title "should" be restored. Ms. Liou's pleadings dispute the legality and validity of the trustee's deeds of sale and any transfer of ownership. *See* Dkt. 1 ¶ 114. But Ms. Liou does not plead facts with sufficient specificity to support a plausible inference that the sales or deeds are void, nor does she plead a coherent theory of how title could be quieted in her favor in the aftermath of the recorded trustee's deeds, subsequent unlawful detainer judgment, and broad releases related to the properties and trustee's sales. *See* Dkt. 15, Exs. 11–13; Dkt. 31, Exs. 4–6, 8–9 (Trustee's Deeds Upon Sale); *see also* Dkt. 1; Dkt. 26.

To the extent Ms. Liou's quiet title and title-based theories for declaratory relief are premised on fraud, they must satisfy FRCP 9(b). But again, Ms. Liou does not identify who made the allegedly false statements, when and how those statements were made, what precisely was communicated falsely, or how those alleged misrepresentations relate to the execution of the Forbearance Agreements or other releases of legal claims. Thus, Ms. Liou's pleadings do not suffice under FRCP 9(b), and fail to state a claim for relief.

Ms. Liou's theories for wrongful foreclosure and deed cancellation rest on substantially the same alleged misconduct (fraudulent default recording and wrongful enforcement). *See* Dkt. 1; Dkt. 26. For the reasons set forth above, Ms. Liou fails to plead concrete facts making those theories plausible, even after taking all inferences in her favor and affording a generous construction to *pro se* plaintiffs. Ms. Liou's pleadings attempt to avoid this consequence by alleging duress, as discussed above, but the pleaded duress allegations do not plausibly establish a "wrongful act" or absence of any "reasonable alternative." *See Rich & Whillock, Inc.*, 157 Cal.App.3d at 1158–59; *Perez*, 157 Cal.App.4th at 959–60. Instead, the pleadings describe

18

financial pressure arising from Defendants' exercise of legally available contractual remedies triggered by Ms. Liou's default. *See* Dkt. 31, Exs. 4–6. As explained above, because Ms. Liou has not plausibly alleged a basis to avoid the releases, the foreclosure-based claims that fall within the scope of those releases are consequently barred.

Accordingly, Ms. Liou's causes of action for quiet title, wrongful foreclosure, cancellation of trustee's deeds, declaratory relief, and related equitable remedies are **DISMISSED**.

C.      State Law Tort and Equitable Claims

Ms. Liou asserts numerous tort and equitable claims based in California state law, including fraud, unjust enrichment, interference with economic advantage, restitution, civil conspiracy, abuse of process, malicious prosecution, fraud on the court, "accounting," and related theories. Dkt. 1; Dkt. 26. These claims all fail.

1.      Fraud-Based Claims

Ms. Liou alleges that Defendants falsely represented the value of the properties at issue, the terms and consequences of the Forbearance Agreements and Settlement Agreement, and the scope of Ms. Liou's legal obligations and rights. Dkt. 1 ¶ 55. She also alleges that Defendants knowingly concealed facts including: the existence of "internal appraisals" valuing the Tulare Properties at over $10 million, and "[t]heir intent to seize the Atherton property regardless of payoff offers; Defendants have fraudulently recorded the deed of trust on the Atherton house as a last-resort guarantee 1-2 weeks prior to recorded the 7 Tulare properties, the main collateral, this is a illegal Bait and Switch." *Id.* at 15.

Under California law, the elements of fraud are: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 990 (Cal. 2004). To the extent Ms. Liou asserts claims based in fraud, fraudulent concealment, material misrepresentations, or other claims premised on a "unified course of fraudulent conduct," FRCP 9(b) applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Ms. Liou's fraud allegations do not identify the specific misrepresentations, speakers, timing, reliance, and causal link to damages with the sufficient particularity to survive a motion to

United States District Court
Northern District of California

dismiss. Ms. Liou's allegations are broad and conclusory, failing to explain the specific acts and mechanisms of alleged fraud: *e.g.*, "Defendants wrongfully and fraudulently foreclosed plaintiff's Personal Guarantee primary residence, the Atherton [Property]"; "Defendants have fraudulently recorded the deed of trust on the Atherton [Property] . . . this is a illegal Bait and Switch"; "These agreements were misrepresented to Plaintiff as routine forbearance and settlement terms"; "Defendants presented 'Buyback Agreements' as supposed settlement offers, which were in fact coerced full waivers and releases." Dkt. 1 at 8–9, 14–15. The FAC adds to the total number of claims, without a meaningful expansion of the factual allegations: "Defendants also initiated fraudulent foreclosure on 7 senior housing projects in Tulare County"; "Defendants misrepresented and lied to the state court and the federal court the TRO Plaintiff filed was too late"; "These misrepresentations directly misled Judge Nina (state court) and Judge EMC (federal court), causing denial of Plaintiff's TRO and prejudice to Plaintiff's rights." FAC at 5, 7. With respect to justifiable reliance, Ms. Liou alleges that she "relied on [Defendants'] false representations and omissions to her detriment — including by: Signing waiver agreements under duress; Failing to escalate to federal court sooner; [and] Not filing a lis pendens until after multiple properties had been foreclosed." Dkt. 1 ¶ 57. But none of these allegations plausibly establish justifiable reliance or resulting detriment.

The duress theory fails for the reasons discussed above. The remaining allegations, that Ms. Liou delayed seeking relief in federal court and delayed recording a lis pendens, also fail. Reliance is not justifiable where the alleged alternative course of action would not have provided legally cognizable relief. The Complaint and FAC do not allege facts demonstrating that Ms. Liou had a viable federal claim warranting relief, nor do they allege facts showing that she had a legitimate basis to record a lis pendens at an earlier time.

Moreover, the pleadings lack the factual details necessary to plausibly state a claim for relief. For example, Ms. Liou refers repeatedly to an alleged $103 million HUD-backed construction loan "which could payoff Defendants up to $12.5 million." Dkt. 1 at 16. "Plaintiff had a valid economic expectancy in successfully closing HUD-backed construction and refinance loans that would have paid off the Defendants loans in full . . . Defendants knew of these

20

economic relationships and the refinancing process and intentionally disrupted them by: Rejecting the HUD payoff timeline." *Id.* at 18.  The Complaint does not specify how or why Ms. Liou had "a valid economic expectancy" in a multi-million dollar HUD-backed loan, or why Defendants were in some way obligated to wait until the loan was secured before initiating foreclosure. Ms. Liou does not allege facts showing the Defendants were not permitted under the terms of the loan documents and applicable state law to initiate foreclosure when they did.  The pleadings do not plausibly allege that Defendants were legally obligated to delay foreclosure pending speculative future financing, nor does she identify any contractual or statutory provision imposing such a duty. The refusal to postpone enforcement of contractual remedies while a borrower pursued aspirational refinancing does not, without *something* more, constitute fraud or independently wrongful conduct.  If anything, the existence of three Forbearance Agreements over the course of a half-year period indicates that Defendants provided Ms. Liou with a lengthy deferral period to cure the default.  Ms. Liou's FAC does not cure these problems.

And finally,  the state law fraud claims, as pled, arise from the loan transaction and enforcement of the loan documents.  They thus fall within the scope of the numerous release agreements in the Forbearance Agreements, and the later Stipulation for Entry of Judgment and Settlement Agreement, including the integration clauses therein.  *See* Dkt. 15, Exs. 11–12; Dkt. 31, Exs. 4–6.  As noted above, Ms. Liou has not plausibly alleged a basis to avoid those releases and provisions.  The fraud claims are therefore barred.

For the foregoing reasons, the pleadings fail to state a claim for relief.  Moreover, the fraud claims are barred by the release agreements.  Accordingly, Ms. Liou's fraud-based claims are **DISMISSED**.

2.    Abuse of Process, Malicious Prosecution, and Fraud on the Court

Under California law, a claim for abuse of process has two elements: (1) an ulterior motive, and (2) a willful act in the use of process not proper in the regular conduct of the proceedings.  *Drum v. Bleau, Fox & Assocs.*, 107 Cal.App.4th 1009, 1019 (Cal. Ct. App. 2003). As pled, Ms. Liou does not identify any specific "process" that Defendants misused in a manner distinct from the underlying loan enforcement and foreclosure which cannot be successfully

United States District Court
Northern District of California

challenged in this case. Instead, her theory appears to be that Defendants invoked foreclosure procedures and unlawful detainer remedies for the allegedly "improper" purpose of defeating her efforts to stop foreclosure. *See* Dkt. 1; Dkt. 26. This is not an improper purpose.

Ms. Liou's malicious prosecution claim similarly cannot survive the motion to dismiss. To succeed, Ms. Liou must plausibly allege that Defendants commenced a prior judicial proceeding that terminated in Ms. Liou's favor, and that the proceeding was brought without probable cause and with malice. *Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336, 341 (Cal. 2004). No such favorable termination occurred here.

Finally, Ms. Liou's allegations that Defendants committed fraud on the court are insufficient. The FAC contends that Defendants lied to state and federal courts by arguing that it was too late for Ms. Liou to seek a TRO, and that there was nothing left for any court to enjoin, and that these statements misled, at a minimum, this Court. Dkt. 26 ¶ 18. The Court has independently reviewed the documents in the record and finds that any such statements by Defendants were not material or egregious misrepresentations undermining the integrity of the judicial process itself. *See In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999); *U.S. v. Bhambra*, 2016 WL 4070128, at *2 (N.D. Cal. July 29, 2016) (Chen, J.). Defendants' advocacy of their position in opposition to Ms. Liou's request for relief was not improper.

Accordingly, Ms. Liou's claims for abuse of process, malicious prosecution, and fraud on the court are **DISMISSED**.

3.    Civil Conspiracy

Ms. Liou also asserts a cause of action for civil conspiracy to defraud. Dkt. 26 at 11. Under California law, civil conspiracy "is not an independent tort or cause of action. Without a tort or wrong to property the conspiracy allegations against defendant in a civil action are meaningless." *Favila v. Katten Muchin Rosenman LLP*, 188 Cal.App.4th 189, 206 (Cal. Ct. App. 2010). Because Ms. Liou's conspiracy allegations are derivative of the underlying fraud theories that fail for the reasons discussed above, and because the allegations are conclusory and barred under the various release agreements, the civil conspiracy cause of action also cannot proceed.

Accordingly, Ms. Liou's civil conspiracy cause of action is **DISMISSED**.

22

United States District Court
Northern District of California

4.    Interference with Economic Advantage

With respect to the HUD-based loans, Ms. Liou also alleges intentional interference with prospective economic advantage. Ms. Liou alleges that she had a "valid economic expectancy" in the HUD loans, and that the loans would have cured any default and prevented foreclosure. *See* Dkt. 1 at 18.

The elements of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and a third party with the probability of future economic benefit to the plaintiff, (2) the defendant's knowledge of the relationship, (3) intentional wrongful acts by the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) economic harm to the plaintiff proximately caused by the defendant's acts. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153–54 (Cal. 2003).

As pled, Ms. Liou's claims are not supported by plausible allegations identifying a specific economic relationship or prospective advantage. Nor do the claims allege knowledge, intent, independently wrongful conduct, or causation. *Id.* As noted above, Defendants had no obligation to withhold or delay exercise of their legal contractual rights in the face of Ms. Liou's default. Nor does the Complaint sufficiently allege a probability of a future economic benefit stemming from an economic relationship between Ms. Liou and a third party which was interfered with. The allegations are wholly conclusory. Moreover, her claims depend on the same alleged wrongful loan and foreclosure conduct that is either inadequately pleaded and/or barred by releases of all legal claims related to the loans and foreclosure.

Accordingly, Ms. Liou's intentional interference with economic advantage claim is **DISMISSED**.

5.    Legal Malpractice

Ms. Liou includes a legal malpractice cause of action in the FAC. *See* Dkt. 36. Ms. Liou does not allege any facts plausibly establishing an attorney-client relationship between Ms. Liou and any named Defendant. *See id.* As pleaded, the theory is conclusory and does not state a plausible claim for relief.

Accordingly, the Court **DISMISSES** the legal malpractice claim.

23

United States District Court
Northern District of California

6.    Destruction of Community Benefit Projects

Finally, Ms. Liou's FAC asserts a claim titled "Destruction of Community-7 Benefit Projects." Dkt. 26 at 11. As pleaded, the claim appears to be one for relief from Defendants' actions that allegedly "destroyed or disrupted seven community-benefit projects," including a senior housing development, charter school, church, Hilton Garden Inn, and daycare centers. *Id.* at 11–12. "These projects were intended to provide substantial social, educational, and economic benefits. Defendants acted with malice and intentional misrepresentation to interfere with these projects. As a result, the community suffered significant harm, including loss of housing, educational services, cultural facilities, and economic impact." *Id.*

This claim does not appear to be a standalone cause of action, however, and it is derivative of the underlying foreclosure and loan-enforcement allegations. The underlying claims fail for the multitude of reasons discussed above, including insufficient pleading and the existence of multiple release agreements. She cites no cognizable legal basis for this claim.

Accordingly, the claim is **DISMISSED**.

7.    Lis Pendens

Ms. Liou also asserts a cause of action for lis pendens, claiming that "Plaintiff will record notices of pendency of action (lis pendens) to provide public notice of the dispute" and that "Plaintiff requests that Defendants be restrained from selling, transferring, or encumbering the properties during litigation." Dkt. 1 ¶¶ 117–20.

The Court has already ruled on Ms. Liou's lis pendens requests on multiple occasions, holding that Ms. Liou lacked any possessory interest in the properties. Dkt. 19. Ms. Liou recorded the lis pendens in contravention of the Court's order. Dkt. 29–30. The Court subsequently held that any "notices of lis pendens on the [Atherton Property] and Tulare County properties" were to be expunged. Dkt. 34. The record and briefing to the Court do not reflect any change in circumstances warranting a revisit of this issue.

Accordingly, Ms. Liou's lis pendens claim is **DISMISSED as moot**.

8.    Unjust Enrichment, Restitution, and Accounting

Ms. Liou seeks restitution and accounting. Dkt. 1; Dkt. 26. These theories are derivative

24

of the underlying claims of alleged wrongdoing and depend on Ms. Liou successfully pleading a viable claim. Ms. Liou has not plausibly pleaded a viable underlying claim, as discussed throughout this order. In any event, the claims are barred by the releases in the Forbearance Agreements and later Stipulation for Entry of Judgment and Settlement Agreement, to the extent they arise out of or relate to the loan transaction, enforcement remedies and foreclosure process, sales, or transfers of the properties.

Accordingly, the unjust enrichment, restitution, and accounting theories are **DISMISSED**.

D.      Federal Claims

Ms. Liou's Complaint asserts a number of theories for relief based in federal statutes and regulations, including claims under TILA, RESPA, FDCPA, NHA, RICO, and certain HUD regulations. *See* Dkt. 1; Dkt. 26. Although Ms. Liou's allegations are extensive with respect to these various federal laws, the claims are almost exclusively based on conclusory allegations and, in many instances, do not identify the statutory provisions allegedly violated, specific conduct constituting the supposed violation, or the required elements to support a private cause of action.

Even construing the pleadings liberally and viewing them in the light most favorable to Ms. Liou, these federal statutory claims fail because they: (1) are barred by the releases of legal claims which she signed on numerous instances, (2) do not plausibly allege the statutory elements to support a cause of action; and (3) where the claims sound in fraud, they do not satisfy the requirements of FRCP 9(b).

1.      TILA and RESPA

TILA concerns the responsible and informed use of consumer credit by requiring certain disclosures by lenders. *See* 15 U.S.C. § 1601(a). RESPA was passed to enhance the information available to consumers regarding the nature and costs of the settlement process and to address abusive settlement charges. *See* 12 U.S.C. § 2601(a). Ms. Liou alleges violations of TILA and RESPA arising out of the May 2019 loan transaction and subsequent servicing and enforcement conduct. Dkt. 1. Specifically, Ms. Liou alleges "[i]nadequate or deceptive disclosure of material loan terms," "excessive fees not disclosed in good faith estimates," and other misconduct resulting in foreclosure of Ms. Liou's property. Dkt. 1 ¶¶ 78–87.

United States District Court
Northern District of California

Ms. Liou does not allege specific disclosures, duties, or prohibited practices, nor does she plausibly allege facts establishing entitlement to the relief sought. The claims are conclusory and ambiguous, with no specific facts explaining the alleged misrepresentations of loan terms. Furthermore, Ms. Liou's TILA and RESPA theories, as pleaded, arise directly from the loan transaction and enforcement of the loan documents, and thus fall within the scope of Ms. Liou's releases in the Forbearance Agreements and later Stipulation for Entry of Judgment and Settlement Agreement. *See* Dkt. 15, Exs. 11–12; Dkt. 31, Exs. 4–6. Ms. Liou has not plausibly alleged a basis to avoid those releases, and the statutory claims are therefore barred. Moreover, any putative TILA claim is mooted by the foreclosures on the subject properties. *See* 15 U.S.C. § 1635(f); *Fonua v. First Allied Funding*, 2009 WL 816291, at *2 (N.D. Cal. Mar. 27, 2009) ("Defendants contend that plaintiff's claim for rescission under TILA has been mooted by the foreclosure sale of the property. Defendants are correct.").

Accordingly, Ms. Liou's TILA and RESPA claims are **DISMISSED**.

2.    FDCPA

The FDCPA was codified to prohibit "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692. The statute prohibits certain conduct to induce collection of debts, including the use of threats of violence, the use of profane language, or calling an individual's phone repeatedly in an attempt to harass them. *Id.* § 1692d.

Ms. Liou alleges that Defendants violated the FDCPA by, *inter alia*, "[m]aking false representations regarding the legal status of the debt," "[i]nitiating foreclosure proceedings without complying with lawful notice and dispute rights," and "[e]ngaging in deceptive tactics during the COVID pandemic to accelerate foreclosure." Dkt. 1 ¶¶ 88–91.

Critically, the FDCPA applies only to "debt collectors" attempting to collect a debt, and the Ninth Circuit has held that lenders who foreclose do not fall within the scope of the FDCPA, because the purpose of foreclosure "is to retake and resell the security, not to collect money from the borrower" even if the prospect of foreclosure indirectly causes an individual to pay a debt. *See Vien-Phuong Thi Ho v. ReconTrust Co, NA*, 858 F.3d 568, 572 (9th Cir. 2017); 15 U.S.C. § 1692a.

Here, Ms. Liou does not plead with sufficient specificity that any Defendant qualifies as a

"debt collector" under the FDCPA, nor that Defendants engaged in actionable debt-collection conduct beyond facilitation of foreclosure. *See* Dkt. 1; Dkt. 26. Nor does Ms. Liou plead sufficient facts describing false representations, unfair collection practices, or statutorily prohibited conduct attributable to any defendant. *See id.* In any event, any such claims were repeatedly waived by the Forbearance Agreements, Stipulation for Entry of Judgment, and Settlement Agreement which released all such legal claims.

Accordingly, Ms. Liou's FDCPA claim is **DISMISSED**.

3.      NHA and HUD Regulations

Ms. Liou invokes the NHA and "HUD regulations" as a basis for liability. Ms. Liou does not identify any specific provisions of either the NHA or HUD regulations, other than 24 C.F.R. § 203.604, which is specific to mortgages insured by the Federal Housing Administration or "mortgages insured on Indian Land."[3] Even then, the regulation only imposes a "face-to-face meeting" requirement or reasonable efforts to arrange such a meeting. *Id.* In this case, Defendants had afforded Ms. Liou at least three forbearances over the course of six months, indicating that reasonable efforts were made to facilitate repayment, and that Ms. Liou was on notice of the default and potential foreclosure. *See* Dkt. 31, Exs. 4–6. Any failure to comply with regulations regarding meetings are immaterial to the relief Ms. Liou seeks herein.

Ms. Liou does not identify any NHA provisions that Defendants allegedly violated, and the Court is hard-pressed to identify any basis for a violation of the NHA. *See* Dkt. 1. The NHA largely concerns the relationship between lenders and HUD, not lenders and borrowers. *See* 12 U.S.C. § 1701, *et seq.* Regardless, courts in this district have repeatedly affirmed that borrowers in Ms. Liou's position do not have a private right of action to sue lenders under the NHA. *See, e.g.*, *Tyson v. TD Servs. Co.*, 2013 WL 5442787, at *4 n.1 (N.D. Cal. Sept. 30, 2013); *Aguiar v. Wells Fargo Bank, N.A.*, 2012 WL 5915124, at *3 (N.D. Cal. Nov. 26, 2012); *Jara v. Aurora Loan Servs., LLC*, 2011 WL 6217038, at *7 n.9 (N.D. Cal. Dec. 14, 2011).

The pleadings do not present a plausible theory connecting the private defendants to any

_____

[3] Defendants represent that the mortgages at issue are not FHA-insured mortgages. MTD at 24. Ms. Liou does not contest that representation.

provision of the NHA or specific regulatory provisions actionable herein.  *See* Dkt. 1; Dkt. 26. Because Ms. Liou's allegations are general and conclusory, and because any such claims are barred by the various release agreements, Ms. Liou's NHA and HUD-based claims are **DISMISSED**.

4.    RICO

Ms. Liou alleges that Defendants "acting in concert, engaged in a pattern of racketeering activity" including mail and wire fraud, misrepresentation of loan status, fraudulent foreclosure and eviction actions, and the use of "forged or unlawful documents to record trustee's deeds [of sale]."  Dkt. 1 ¶¶ 104–08.

To state a RICO claim, a plaintiff must plausibly allege at least two predicate acts of racketeering supported by specific factual allegations.  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008) ("To state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least two predicate acts.").  Predicate acts involving fraud must be pleaded with heightened particularity pursuant to FRCP 9(b).  *Focus 15, LLC v. NICO Corp.*, 2022 WL 2355537, at *3 (N.D. Cal. June 30, 2022) (Chen, J.) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004)).

Here, Ms. Liou's RICO allegations are threadbare, falling short of plausibly pleading a distinct enterprise, pattern of racketeering activity, or predicate acts.  *See* Dkt. 1 ¶¶ 104–08. Rather, Ms. Liou's allegations repackage the same loan enforcement disputes and foreclosure-related conduct as "racketeering" without alleging specific facts identifying the required elements of a RICO violation.  In any event, any such alleged conduct or injury would likely fall within the scope of the releases identified in the Forbearance Agreements, Stipulation for Entry of Judgment, or Settlement Agreement.  *See* Dkt. 15, Exs. 11–12; Dkt. 31, Exs. 4–6.

Accordingly, Ms. Liou's RICO cause of action is **DISMISSED**.

5.    Due Process and Section 1983 Claims

Ms. Liou's FAC asserts a claim for violation of Due Process, and for violation of civil rights under 42 U.S.C. § 1983.  The pleadings do not provide more detailed factual allegations or a basis for either of her constitutional theories.

Ms. Liou does not identify a state actor or plausibly allege that any Defendant acted under color of state law. *See* Dkt. 1; Dkt. 26. Nor does Ms. Liou plead a coherent constitutional deprivation theory. *See id.*

Accordingly, Ms. Liou's constitutional theories are **DISMISSED**.

E.      Leave to Amend

Ms. Liou already amended her complaint once. Dkt. 26. The FAC expressly indicated that it was "preliminary" and that Ms. Liou reserved the right to file a more complete amendment upon retaining counsel. *Id.* Ms. Liou later retained counsel. Dkt. 28. Yet no further amendment was filed.

More importantly, the core deficiencies identified above are not merely matters requiring additional factual details. The deficiencies are legal and structural. Namely, Ms. Liou's claims are foreclosed to a substantial extent by numerous release agreements, and Ms. Liou has not plausibly alleged a basis to avoid the effect of those releases, especially in view of the multiple agreements she entered into, some with the advice and consent of counsel. Ms. Liou's fraud, duress, and coercion theories fail to satisfy pleading standards and are bereft of legitimate factual backing. And many of Ms. Liou's other claims are either derivative of these deficient theories or fail because they do not allege basic elements.

Under these circumstances, further amendment would be futile. Accordingly, the Court **DISMISSES** Ms. Liou's Complaint and FAC **WITHOUT LEAVE TO AMEND**.

## VI.      CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Ms. Liou's Complaint and FAC are **DISMISSED WITHOUT LEAVE TO AMEND**.

///

///

///

///

///

///

29

**IT IS SO ORDERED**.

Dated: February 17, 2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

30